## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA     :
                                     :
        *versus*             :    CRIMINAL NO. 16- 10 - JwD - RLB
                                     :
MICHAEL DAVID PITTS          :

## PLEA AGREEMENT

The United States Attorney's Office for the Middle District of Louisiana ("the United States") and MICHAEL DAVID PITTS ("the defendant") hereby enter into the following plea agreement pursuant to Fed. R. Crim. P. 11(c).

## A.    THE DEFENDANT'S OBLIGATIONS

### 1.    Guilty Plea

The defendant agrees to enter a plea of guilty to a Bill of Information charging him with Wire Fraud in violation of 18 U.S.C. § 1343.

### 2.    Financial Information

The defendant agrees to fully and truthfully complete the financial statement provided to him by the United States and to return the financial statement to the United States within ten days of this agreement being filed with the Court.  Further, the defendant agrees to provide the United States with any information or documentation in his possession regarding his financial affairs and to submit to a debtor's examination upon request.  Any financial information provided by the defendant may be used by the United States to collect any

financial obligations imposed in this prosecution and may be considered by the Court in imposing sentence.

### 3.   <u>Waiver of Indictment</u>

Through this agreement, the defendant hereby waives his right under the Fifth Amendment of the United States Constitution to have the charge contained in the Bill of Information instituted by a Grand Jury Indictment.  The defendant agrees to express and execute such waiver at the arraignment and at any other point in the proceedings.  The defendant understands the nature of the charge against him and agrees that the proceedings may be instituted by a Bill of Information.

### 4.   <u>Cooperation</u>

The defendant hereby waives the Fifth Amendment privilege against self-incrimination and agrees to cooperate with the United States by providing complete and truthful information whenever, wherever, to whomever, and in whatever form an attorney for the United States or federal law enforcement agent requests, including by providing oral answers to questions, written statements, answers to interrogatories, testimony in court, testimony before a grand jury, and documents and other items.

The defendant agrees not to disclose to anyone (other than his attorney) his cooperation, the existence of any federal investigation in which he cooperates, or any information learned as a result of his cooperation without authority from an attorney for the United States or a federal law enforcement agent.

The United States is not obligated to receive, agree to, or act upon information or other cooperation which the defendant may wish to provide.

Except as otherwise provided herein or in USSG § 1B1.8(b), no truthful testimony or statements by the defendant or act of producing documents or items by the defendant pursuant to this agreement, or any evidence or information derived therefrom, will be used against the defendant in the United States' case-in-chief in a criminal trial or in sentencing the defendant in this case, except to advise the Court of the extent and value of the defendant's cooperation or to support a motion under USSG § 5K1.1 or Fed. R. Crim. P. 35. The United States may use all statements made by the defendant and the defendant's act of producing documents or items, and any evidence or information derived therefrom, in any other manner, including as follows: in rebuttal at any criminal trial, to cross examine the defendant in any trial or proceeding, in forfeiture proceedings, evidentiary hearings, or civil or administrative hearings, and in its case-in-chief in any prosecution for perjury, making false statements or declarations, or obstruction of justice committed on or after the effective date of this agreement.

## B.   UNITED STATES' OBLIGATIONS

### 1.   Non-prosecution of Charges

The United States agrees that, if the Court accepts the defendant's guilty plea, it will not prosecute the defendant for any offenses related to the offense charged in the Bill of Information.

MICHAEL DAVID PITTS  Page 3   February 4, 2016

2.      **Motion for Third Point for Acceptance of Responsibility**

The United States acknowledges that the defendant has assisted authorities in the investigation or prosecution of the defendant's own misconduct by timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the United States to avoid preparing for trial and permitting the United States and the Court to allocate their resources efficiently.  The United States therefore agrees that, if the Court finds that the defendant qualifies for a two-level decrease in offense level for acceptance of responsibility under USSG § 3E1.1(a) and, prior to the operation of USSG § 3E1.1(a), the defendant's offense level is 16 or greater, the United States will move the Court pursuant to USSG § 3E1.1(b) to decrease the defendant's offense level by one additional level.  The United States reserves the right to object to a decrease in offense level for acceptance of responsibility based on information received by the United States after the effective date of this agreement, including information that the defendant failed to timely submit the financial statement required by Section A(2) of this agreement.

3.      **Advising Court of Cooperation**

The United States agrees to inform the Court at or before sentencing of the extent and value of any cooperation by the defendant pursuant to this agreement, regardless of whether such cooperation constitutes "substantial assistance" within the meaning of USSG § 5K1.1. The evaluation of whether and to what extent the defendant has cooperated with the United States, and the value of any cooperation, shall be solely within the discretion of the United States.  The United States is not obligated to file any motion with the Court based on the defendant's cooperation, including any motion under USSG § 5K1.1 or Fed. R. Crim. P. 35.

If a motion is filed, the Court, in its sole discretion, may or may not grant a departure from the United States Sentencing Guidelines or reduce the sentence after its imposition.

C.    **SENTENCING**

    1.    **Maximum Statutory Penalties**

The maximum possible penalty is a term of imprisonment of 20 years, a fine of up to $250,000 or twice the gross gain or twice the gross loss, whichever is greater, and a term of supervised release of three years.

In addition to the above, the Court must impose a special assessment of $100 per count which is due at the time of sentencing.  The Court may also order restitution.

    2.    **Supervised Release**

Supervised release is a period following release from imprisonment during which the defendant's conduct is monitored by the Court and the United States Probation Office and during which the defendant must comply with certain conditions.  Supervised release is imposed in addition to a sentence of imprisonment, and a violation of the conditions of supervised release can subject the defendant to imprisonment over and above any period of imprisonment initially ordered by the Court for a term of up to two years, without credit for any time already served on the term of supervised release.

    3.    **Sentencing Guidelines**

The Court will determine in its sole discretion what the defendant's sentence will be. While the Court must consider the United States Sentencing Guidelines in imposing sentence, the Sentencing Guidelines are not binding on the Court.  The Court could impose

any sentence up to the maximum possible penalty as set out above despite any lesser or greater sentencing range provided for by the Sentencing Guidelines.

### 4.    Agreement Regarding Sentencing

The defendant and the United States agree, pursuant to 18 U.S.C. § 3663(a)(3), that the Court shall not be limited to the count of conviction for purposes of ordering restitution. As a condition of this plea agreement, the defendant agrees that the Court will order full restitution to Amedisys in the amount of $7,641,528.  Otherwise, except as set forth in this agreement, the United States makes no promises, representations, or agreements regarding sentencing.  In particular, the United States reserves the right to present any evidence and information to the Court and the United States Probation Office regarding sentencing.

### 5.    Forfeiture

The defendant agrees to forfeit any property constituting, or derived from, proceeds he obtained directly, or indirectly, as a result of the offense charged in the Bill of Information.   The defendant admits that the amount of the proceeds derived from the offense was $7,641,528.   He therefore agrees to forfeit to the United States a sum of money equal to $7,641,528 in United States currency and consents to entry of a personal money judgment against him in such amount.

The defendant understands that forfeiture of his property, including by payment of a money judgment, will not be treated as satisfaction of any fine, restitution, cost of imprisonment, or other penalty which may be imposed upon him as part of his sentence.  The defendant further understands that, separate and apart from his sentence in this case, the

United States may also institute civil or administrative forfeiture proceedings of any property, real or personal, which is subject to forfeiture.

The defendant agrees to fully and truthfully disclose the existence, nature, and location of all assets and to fully and completely assist the United States in the recovery and forfeiture of all forfeitable assets, including taking all steps as requested by the United States to pass clear title to forfeitable assets to the United States.  The defendant agrees to hold the United States, its agents, and its employees harmless from any claims whatsoever in connection with the seizure or forfeiture of property pursuant to the Court's forfeiture orders.

The defendant hereby waives the following: (1) all statutory and constitutional defenses to the forfeiture, including any claim that the forfeiture constitutes an excessive fine or punishment; (2) any failure by the Court to ensure at sentencing that the defendant is aware of the forfeiture or to incorporate the forfeiture in the judgment as required by Fed. R. Crim. P. 32.2(b)(4)(B); and (3) any failure by the Court to inform the defendant of, and determine that the defendant understands, the applicable forfeiture prior to accepting the defendant's plea.

D.     **FACTUAL BASIS**

The United States and the defendant stipulate to the following facts:

On March 5, 2012, Michael David Pitts caused Amedisys to purchase false and fictitious tax credits valued at $222,500.  The payment was executed by an interstate wire transfer initiated in Baton Rouge and concluded at banks outside the State of Louisiana.

Michael David Pitts ("Pitts") was employed at Amedisys, Inc. ("Amedisys") on January 17, 2005 and continued such employment until July 31, 2014.  Pitts was initially hired as the Amedisys Tax Director, and in 2006, assumed the title, role, and responsibilities of Vice-President of Tax ("Tax-VP").  As the Tax-VP, he was responsible for all Amedisys tax matters, including the preparation of state and federal tax returns and

the payment of state income taxes in the various states where Amedisys operated its business. Pitts was afforded a degree of operational autonomy.

As the Tax-VP, Pitts was encouraged to identify means of reducing Amedisys' tax liabilities. In order to reduce the Amedisys tax liabilities in the States of Louisiana, Georgia, Michigan, and Oklahoma, Pitts purchased tax credits in each of these States.

On behalf of Amedisys, Pitts purchased various state tax credits from Stonehenge Capital Company, LLC through a subsidiary known as Stonehenge Entertainment, LLC ("Stonehenge Capital—Stonehenge Entertainment"), a local broker who bought and sold tax credits. Specifically, Pitts purchased Georgia film tax credits, Louisiana franchise tax credits, and Louisiana new market tax credits. The state tax credits were applied, and used, to reduce Amedisys' Georgia and Louisiana income tax liabilities.

*The Scheme To Defraud*

Pitts created a knockoff company known as "Stonehenge Entertainment," a name nearly identical to the legitimate enterprise known as Stonehenge Capital—Stonehenge Entertainment. Pitts solely controlled and benefitted from Stonehenge Entertainment. Pitts' Stonehenge Entertainment maintained an account #5757 at Capital One Bank, N.A. The name was chosen because of its close similarity to the legitimate company known as Stonehenge Capital—Stonehenge Entertainment. The real Stonehenge Capital—Stonehenge Entertainment maintained account #8843 at National City Bank in Cleveland, Ohio and #0275 at JP Morgan Chase Bank.

Pitts used the knockoff company to defraud Amedisys; in short, Pitts created false tax credits in the name of the knockoff company and then caused Amedisys to pay his knockoff company for the purchase of the fictitious tax credits. Pitts used the fraud proceeds for his personal enrichment.

The use of the knockoff company name avoided detection of the fraud.

Additionally, Pitts created another company known as Evergreen Incentives, LLC ("Evergreen Incentives"), which company he also utilized to carry out his scheme to defraud. Evergreen Incentives maintained an account #9952 at Regions Bank.

In order to carry out the scheme to defraud, Pitts created false and fictitious "Tax Credit Transfer Agreements." To execute his scheme, Pitts created and submitted "Requests for Payment," which sought corporate approval to buy the false and fictitious tax credits, and "Requests for Wire Payment," which achieved the objective of diverting Amedisys funds for his personal enrichment.

The Tax Credit Transfer Agreements falsely represented that Amedisys had purchased tax credits issued by the States of Louisiana, Georgia, California, Oklahoma, and Michigan.

Pitts submitted the Requests for Payment to corporate officers for approval. Because Pitts enjoyed the status and respect of VP-Tax for Amedisys, corporate officers routinely approved the tax credit purchases submitted by Pitts.

The Requests for Wire Payment were the actual wire transfer instructions which Pitts gave to Amedisys staff in order to pay for the purchase of the bogus tax credits. Pitts directed the proceeds of the fraud into bank accounts which he controlled at Capital One (Stonehenge Entertainment) and Regions Bank (Evergreen Incentives).

*Use of Interstate Wire Communications*

In order to divert Amedisys funds to his personal enjoyment, Pitts caused accounts payable personnel to wire Amedisys funds into his knockoff Stonehenge Entertainment account #5757 at Capital One Bank and his Evergreen Incentives account #9952 at Regions. On 21 occasions, wire transfers were initiated using computers and servers located in the Middle District of Louisiana and routed to bank servers located outside the State of Louisiana.

*Execution of Scheme*

In or about March 2012, Pitts caused Amedisys to purchase Oklahoma tax credits from Evergreen Incentives. According to the "Oklahoma Tax Credit Purchase Agreement ("OK Purchase Agreement")," Amedisys bought $250,000 of 2011 film tax credits from Evergreen Incentives for the amount of $222,500. Pitts signed the OK Purchase Agreement on behalf of Amedisys and submitted the proposed Purchase Agreement to Amedisys's corporate officers for approval, including the Senior Vice President and the Chief Executive Officer. Relying upon the representations of Pitts, each executive approved of the purchase as proposed, unaware that the tax credits were a sham transaction created by Pitts for his personal enrichment.

On or about March 5, 2012, Pitts submitted a "Request for Wire Payment" to the accounts payable personnel of Amedisys. As requested, Amedisys A/P personnel located in Baton Rouge initiated a wire transfer from Amedisys's JPMorgan Chase Bank ("Chase") account. The March 5, 2012 wire transaction transferred $222,500 from Amedisys's Chase general ledger cash account to Pitts' Evergreen account #9952 at Regions. Regions Bank wire transfer processing operations, and its servers, were located outside the State of Louisiana.

Amedisys paid Pitts' companies $7,641,528 for the purchase of fictitious tax credits. Pitts used the funds to purchase land, homes, and commercial property, as well as pay off mortgages, credit card debts, and school loans. An unknown amount of the proceeds were spent on gambling activities.

The defendant admits that, to the best of his knowledge and belief, the stipulated statement of

facts is true and correct in all respects. The United States and the defendant agree that, had

this matter gone to trial, the United States could have proved such facts.  The United States and the defendant further agree that such facts are sufficient to support conviction of the offense to which the defendant has agreed to plead guilty.  The defendant understands that, by the terms of USSG § 6B1.4, the Court is not limited by the stipulated facts for purposes of sentencing.  Rather, in determining the factual basis for the sentence, the Court will consider the stipulation, together with the results of the presentence investigation and any other relevant information.

E.      **BREACH AND ITS CONSEQUENCES**

1.      **Conduct Constituting Breach**

Any of the following actions by the defendant constitutes a material breach of this agreement:

a.      failing to plead guilty to the Bill of Information at arraignment;

b.      representing, directly or through counsel, to the United States or the Court that he will not plead guilty to the Bill of Information;

c.      moving to withdraw his guilty plea;

d.      filing an appeal or instituting other post-conviction proceedings not authorized in Section F(2);

e.      disputing or denying guilt of the offense to which the defendant has agreed to plead guilty or denying or disputing any fact contained in the stipulated factual basis;

f.      failing or refusing to waive indictment in open court at arraignment;

g.      concealing or disposing of assets with the specific intent of shielding such assets from forfeiture;

h.      refusing to provide information or testimony;

MICHAEL DAVID PITTS  Page 10  February 4, 2016

i.     disclosing, without authority, his cooperation, the existence of any federal investigation in which he cooperates, or any information learned as a result of his cooperation;

j.     providing false, misleading, or incomplete information or testimony, including financial information and testimony provided pursuant to Section A(2), to the United States; or

k.     violating the terms of this agreement in any other manner.

## 2.    **Consequences of Breach**

In the event of a breach by the defendant, the United States is relieved of its obligations under the agreement. In particular, the United States may prosecute the defendant for any criminal offense. In addition, any statements and information provided by the defendant pursuant to this agreement or otherwise, and any information and evidence derived therefrom, may be used against the defendant in this or any other prosecution or proceeding without limitation. Such statements and information include, but are not limited to, the plea agreement itself (including the factual basis contained in Section D), statements made to law enforcement agents or prosecutors, testimony before a grand jury or other tribunal, statements made pursuant to a proffer agreement, statements made in the course of any proceedings under Rule 11, Fed. R. Crim. P. (including the defendant's entry of the guilty plea), and statements made in the course of plea discussions. The defendant expressly and voluntarily waives the protection afforded by Fed. R. Evid. 410 as to any statements made by him personally (but not as to statements made by his counsel). The defendant is not entitled to withdraw his guilty plea.

### 3.      Procedure for Establishing Breach

The United States will provide written notice to the defendant or his attorney if it intends to be relieved of its obligations under the agreement as a result of a breach by the defendant.  After providing such notice, the United States may institute or proceed with any charges against the defendant prior to any judicial determination regarding breach.  However, the United States will obtain a judicial determination regarding breach prior to using statements and information provided by the defendant or any act of producing documents or items by the defendant pursuant to this agreement, or any evidence or information derived therefrom, in its case-in-chief in a criminal trial or in sentencing the defendant in this case. The standard of proof in any proceeding to determine whether the plea agreement has been breached is preponderance of the evidence.  To prove a breach, the United States may use (1) any and all statements of the defendant, (2) any and all statements of his counsel to the Court (including the United States Probation Office), and (3) any representation by defense counsel to the United States that the defendant will not plead guilty.

## F.      WAIVERS BY THE DEFENDANT

### 1.      Waiver of Trial Rights

By pleading guilty, the defendant waives the right to plead not guilty or to persist in a not guilty plea and waives the right to a jury trial.  At a trial, the defendant would have the trial rights to be represented by counsel, to confront and examine adverse witnesses, to be protected against compelled self-incrimination, to testify and present evidence, to compel the attendance of witnesses, and to have the jury instructed that the defendant is presumed innocent and the burden is on the United States to prove the defendant's guilt beyond a

reasonable doubt.  By waiving his right to a trial and pleading guilty, the defendant is waiving these trial rights.

### 2.      Waiver of Appeal and Collateral Remedies

Except as otherwise provided in this section, the defendant hereby expressly waives the right to appeal his conviction and sentence, including any appeal right conferred by 28 U.S.C. § 1291 and 18 U.S.C. § 3742, and to challenge the conviction and sentence in any post-conviction proceeding, including a proceeding under 28 U.S.C. § 2241, 28 U.S.C. § 2255, or 18 U.S.C. § 3582(c)(2).  This waiver applies to any challenge on appeal or in any post-conviction proceeding to any aspect of the defendant's sentence, including imprisonment, fine, special assessment, restitution, forfeiture or the length and conditions of supervised release or probation.  The defendant, however, reserves the right to appeal the following: (a) any sentence which is in excess of the statutory maximum; (b) any sentence which is an upward departure pursuant to the Sentencing Guidelines; and (c) any non-Guidelines sentence or "variance" which is above the guidelines range calculated by the Court.  Notwithstanding this waiver of appeal and collateral remedies, the defendant may bring any claim of ineffectiveness of counsel.

### 3.      Waiver of Statute of Limitations

The defendant hereby waives all defenses based on the applicable statutes of limitation as to the offense charged in the Bill of Information and all offenses that the United States has agreed not to prosecute, as long as such offenses are not time-barred on the effective date of this agreement.  The defendant likewise waives any common law, equitable, or constitutional claim of pre-indictment delay as to such offenses, as long as such offenses

are not time-barred on the effective date of this agreement. The waivers contained in this paragraph will expire one year after the date of any of the following: (1) a judicial finding that defendant has breached the plea agreement; (2) the withdrawal of any plea entered pursuant to this plea agreement; or (3) the vacating of any conviction resulting from a guilty plea pursuant to this plea agreement.

### 4. Waiver of Speedy Trial Rights

The defendant hereby waives any common law, equitable, or constitutional claim regarding post-indictment delay as to the offense charged in the Bill of Information. The waiver contained in this paragraph will expire one year after the date of any of the following: (1) a judicial finding that defendant has breached the plea agreement; (2) the withdrawal of any plea entered pursuant to this plea agreement; or (3) the vacating of any conviction resulting from a guilty plea pursuant to this plea agreement.

## G. EFFECT OF AGREEMENT

### 1. Effective Date

This agreement is not binding on any party until signed by the defendant, defendant's counsel, and an attorney for the United States. Once signed by the defendant, his counsel, and an attorney for the United States, the agreement is binding on the defendant and the United States.

### 2. Effect on Other Agreements

This agreement supersedes any prior agreements, promises, or understandings between the parties, written or oral, including any proffer agreement.

3.      **Effect on Other Authorities**

The agreement does not bind any federal, state, or local prosecuting authority other than the United States Attorney's Office for the Middle District of Louisiana.

4.      **Effect of Rejection by Court**

Pursuant to Fed. R. Crim. P. 11, the Court may accept or reject this plea agreement. If the Court rejects the plea agreement, the plea agreement is no longer binding on the parties and is not binding on the Court.  If the Court rejects the plea agreement, the defendant will be given the opportunity to withdraw his plea and such withdrawal will not constitute a breach of the agreement.  If the defendant does not withdraw his plea following rejection of the plea agreement, the disposition of the case may be less favorable to the defendant than contemplated by the plea agreement.

H.      **REPRESENTATIONS AND SIGNATURES**

1.      **By The Defendant**

I, MICHAEL DAVID PITTS, have read this plea agreement and have discussed it with my attorney.  I fully understand the agreement and enter into it knowingly, voluntarily, and without reservation.  I have not been threatened, intimidated, pressured, or coerced in any manner.  I am not under the influence of any substance or circumstance that could impede my ability to understand the agreement and its consequences.

I affirm that absolutely no promises, agreements, understandings, or conditions have been made, agreed to, or imposed by the United States in connection with my decision to plead guilty except those set forth in this agreement.

MICHAEL DAVID PITTS  Page 15  February 4, 2016

I acknowledge that no promises or assurances have been made to me by anyone as to what my sentence will be.  I understand that representations by my attorney (or anyone else) regarding application of the Sentencing Guidelines and/or my possible sentence are merely estimates and are not binding on the Court.

I have read the Bill of Information and have discussed it with my attorney.  I fully understand the nature of the charge. I understand that I am entitled, under the Fifth Amendment of the United States Constitution, to have the charge instituted by a Grand Jury Indictment.

I have accepted this plea agreement and agreed to plead guilty because I am in fact guilty of the offense charged in the Bill of Information.

I am satisfied with the legal services provided by my attorney and have no objection to the legal representation I have received.

_____          DATE: __3/11 2016_____
MICHAEL DAVID PITTS
Defendant

2.    **By Defense Counsel**

I have read this plea agreement and have discussed it with my client, MICHAEL DAVID PITTS, who is the defendant in this matter.  I am satisfied that the defendant understands the agreement and is entering into it knowingly and voluntarily.  The agreement accurately and completely sets forth the entire agreement between the defendant and the United States.

_____          DATE: __3-3-16_____
Fred Crifasi
Counsel for Defendant

3.   **By the United States**

    We accept and agree to this plea agreement on behalf of the United States.  The

agreement accurately and completely sets forth the entire agreement between the defendant

and the United States.

_____                    DATE: _____

J. Walter Green
United States Attorney
Middle District of Louisiana

_____                    DATE: 03 |09 /16

Rene I. Salomon
Assistant United States Attorney
Middle District of Louisiana